UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAE E. COOPER,

      Plaintiff,

v.

                        Case No.: 8:12-cv-1041-T-33EAJ

COMMUNITY HAVEN FOR ADULTS
& CHILDREN WITH DISABILITIES,

      Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Community Haven for Adults & Children with Disabilities' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 19), filed on August 7, 2012. Plaintiff Mae E. Cooper filed a response in opposition to the motion on September 5, 2012. (Doc. # 24). For the reasons stated below, the Court grants the motion to dismiss.

**I.   Factual Background**

Cooper was hired by Community Haven on June 29, 2009. (Doc. # 14 at 2). It appears that Cooper was initially given full-time hours, but she was told that after three months she would "be hired on" if needed. (Id. at 17). Cooper indicates that she primarily worked in the preschool (Id. at 13), and for an unspecified amount of time, she worked in Michelle

Caresona's classroom (Id. at 17).  Cooper indicates that sometime before she was hired, she experienced trouble with her right shoulder, and her healthcare provider diagnosed a "small degenerative osteophyte coming off the distal clavicle causing [a] mild indentation of the superior margin of the supraspinatus muscle." (Id. at 18).  Cooper claims that the "diaper routine" in place at the preschool made her back and right leg hurt, but when she asked the lead aide in Caresona's classroom to change the routine, the aide would not do so. (Id. at 13). At that time, Caresona told Cooper that Cooper needed to be able to lift fifty pounds. (Id.). The date of this event is not provided. Cooper claims that she did not know being able to lift fifty pounds was an employment requirement when she was hired, and that if she lifted that kind of weight, "the S1 Disc would cause problems. . . . Mainly that's why [Cooper] was [h]ired to work in the preschool." (Id.). Cooper also states that on one occasion her "right foot hurt," but Caresona would not excuse her from a walk with the children (Id. at 12), and that she was often sent to the administration building "2-3 times a day to relieve aides for break or to assist with children" and "it was wearing [Cooper] out." (Id.). Again, no dates are provided for these events.

2

In October 2009, Cooper's schedule was changed to an "as needed" basis. (Id. at 14). Cooper says that "during that period" two people were hired. (Id.). Cooper also alleges that she was not able to work on the computers because her "pin never worked," and instead, she cleaned while the other aides did computer work. (Id.) (emphasis in original). Regarding this assignment allocation, Cooper writes: "How can I get a promotion or proper raise if all I know is how to clean good." (Id.).

In late October 2009, Cooper was scheduled to work "three days on the bus route" and "started at 4:30am" on those days. (Id. at 10). Cooper says that she was "overworked" because of this additional duty, and she told Caresona that working the extra hours made her so tired that she was "a danger to the children." (Id.).

Then, on November 4, 2009, Cooper jumped down from the back of a stationary pick-up truck after loading furniture onto it and "fell on both knees." (Id. at 11). She worked November 5, 6, 9, and 10, and was called in to work an unscheduled day on November 11, 2009. (Id. at 10). Cooper claims that she told Caresona she was not well enough to work, but Caresona "was not listing [sic] to me saying I am sick and had been sick after the fall . . . ." (Id.). Cooper reported

3

to work, but later in the day she asked Caresona if she could leave early. (Id. at 9). Caresona told her "no deals" and "stay until 2:00pm." (Id.). Cooper alleges that the "November 11, 2009, cleaning Re-injured [her] Knees / Hips / Lumbar / Both Shoulders."  (Id. at 8). On November 12, 2009, Cooper informed Caresona that she "was in pain from the neck -- down right side of my spine -- into leg -- Down into right foot; This included both arms / more pain in ® [sic] Shoulder." (Id. at 9).

Sometime after November 12, 2009, Caresona called Cooper to ask when Cooper would return to work. (Id. at 7). Cooper says that she "was afraid to let [Caresona] supervise over [Cooper] any more . . . ." (Id.). Eventually, Cooper filed two reports with human resources: one for her back and legs, and one for her arms. (Id.). She also attended an appointment at U.S. Health Works on November 23, 2009, and reports that "Dr. Tobias notes: A long standing shoulder injury since 2004. Distribution of Pain is different now. D.O.S. 11/23/09." (Id.).

Sometime after the November 11, 2009, appointment, Cooper gave Caresona "the medical report with the limitations On back lifting, sitting and standing as tolerated, right shoulder no excessive use." (Id. at 6). Presumably in response to the

medical report, Caresona told Cooper, "There's no light duty work here." (Id.). However, Cooper claims there were other options available: "I could have worked in the Preschool where there was limited lifting." (Id.).

Although the time line is very unclear (April 19, 2010, is listed, but it is not clear what occurred on that date), it appears that Cooper met with additional healthcare providers, and she alleges additional pain and physical limitations, including bursitis of both hips, "persistent pain" in her right shoulder, occasional tingling and numbness in her left shoulder, and sensitivity in two fingers on the right hand. (Id. at 4). She also says that her right leg, thigh and knee, as well as her lower back, now become "worse with much activity." (Id.). Additionally, Cooper claims that a doctor "at Bay Pines" gave her "a Permanent disability Pass and explained Fibromyalgia has been diagnosed as a [an] early sign in 2010." (Id. 3-4). A MRI was also performed on Cooper's right shoulder on January 26, 2010, and on her left shoulder on June 19, 2010. (Id. at 9, 10). Cooper alleges that there was never a "good faith effort to talk to me on reasonable accommodations after being released to return to work on December 18, 2009." (Id. at 5) (original emphasis omitted).

Additionally, Cooper alleges that in July 2009, while she

was still a full-time employee, she began work at 7:00 A.M. instead of 8:00 A.M. (Id. at 16). Cooper claims that Caresona told Cooper that Cooper would be given no overtime. (Id.). Cooper seeks payment for "60 hours of time worked for but was not paid." (Id. at 15). Also, Cooper alleges that "[A]s early as September 1, 2009 - December 14, 2009," she attended classes as part of a Childcare Apprenticeship Program. (Id. at 15). Cooper says that "Missy[,] my Director" told her she would be given a raise upon completion of the class. (Id.). She also claims that she attended two other seminar courses-- one eight hour course and one seven hour course. (Id.). She lists August 15, 2009, for the seven hour course and "2009" for the eight hour course. (Id.). It is not clear what relief Cooper seeks in connection with these allegations.

Cooper was terminated on May 25, 2010. (Id. at 6). The circumstances surrounding Cooper's termination are not explained.

## II.  **Legal Standard**

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). In reviewing a motion to dismiss, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable

to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Furthermore, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and

will, therefore, be liberally construed." <u>See</u> <u>Tannenbaum v.</u> <u>United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). Even so, the requirements for pleading and dismissal are still applicable. <u>Douglas v. Yates</u>, 535 F.3d 1316, 1320 (11th Cir. 2008).

## III. **<u>Analysis</u>**

As a threshold matter, the Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings. "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" <u>Horsley v.</u> <u>Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed.R.Civ.P. 7(a) and 10(c)). Furthermore, the incorporation by reference doctrine allows a court to consider a document attached to the pleadings or to a motion to dismiss without converting a Rule 12(b)(6) motion into a motion for summary judgment if the document is central to the claim and its authenticity is not challenged. <u>Id.</u> at 1134-35. Additionally, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions

8

those contents, we may consider such a document provided it meets the centrality requirement imposed in <u>Horsley</u>." <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005).

Here, the Court has considered only the amended complaint (Doc. # 14), and the attachment to the original complaint labeled "Exhibit 1" (the EEOC charge) (Doc. # 2-1), which Cooper references in her amended complaint (Doc. # 14 at 6-7), and Community Haven references in its motion to dismiss (Doc. # 19 at 8-10). It cannot be disputed that exhibit 1 is central to Cooper's claims against Community Haven. The parties have not questioned the authenticity of these documents.

Additionally, the Court notes that Cooper's amended complaint is filed backwards. (Doc. # 14). Essentially, it appears that the filed page one is a copy of the mailing envelope, page two is the intended page one, but the intended page three was filed as page eighteen, the intended page four was filed as page seventeen, the intended page five was filed as page sixteen, and so on. (<u>Id.</u>). It appears Community Haven read Cooper's amended complaint in the order it was filed; it also renumbered Cooper's paragraphs and interpreted each paragraph as a separate count. (Doc. # 19). While some paragraphs do appear to state individual claims, many paragraphs only contain factual allegations. The Court will

not use Community Haven's numbering and instead will address Cooper's claims topically.

It appears that Cooper alleges violations of (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; (2) the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. § 12101 *et seq.*; (3) 42 U.S.C. § 1983; and (4) the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 201 *et seq.*

### A.   Title VII Claims

Pursuant to Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

However, before filing a suit under Title VII, a plaintiff must exhaust her available administrative remedies by filing a charge with the Equal Employment Opportunity Commission. Anderson v. Embarq / Sprint, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)). "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the

10

administrative charge and investigation." <u>Anderson</u>, 379 F. App'x at 926. A plaintiff's complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." <u>Alexander v. Fulton Cnty., Ga.</u>, 207 F.3d 1303, 1332 (11th Cir. 2000); <u>see also Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 460 (5th Cir. 1970) (noting that the allegations in a complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge).

Therefore, claims -- even new claims -- "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint . . . ." <u>Anderson</u>, 379 F. App'x at 926 (internal quotations omitted). Conversely, "allegations of new acts of discrimination are inappropriate." <u>Gregory v. Ga. Dept. of Human Res.</u>, 355 F.3d 1277, 1279-80 (11th Cir. 2004). Nonetheless, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." <u>Sanchez</u>, 431 F.2d at 460-61. As such, "the scope of an EEOC complaint should not be strictly interpreted." <u>Id.</u> at 465.

Therefore, the proper inquiry here is whether Cooper's complaint was like or related to, or grew out of, the allegations contained in her EEOC charge. <u>See Gregory</u>, 355

F.3d at 1280. Cooper checked only the box labeled "disability" on her EEOC charge of discrimination.  (Doc. # 2-1 at 2). The factual allegations mention only that she was injured, that she was "never brought back to work," that she was "denied reasonable accommodations," and that she was terminated on May 25, 2010. (Id.). Cooper also wrote, "I believe that I have been discriminated against because of my disability and regarded as disabled in violation of the Americans with Disabilities Act, as amended." (Id.). What Cooper does *not* claim is that she was discriminated against based on race, color, religion, sex, or national origin--discrimination protected against by Title VII.

Cooper's Title VII claims could not reasonably be expected to grow out of her allegations of disability discrimination. In a similar case, the Eleventh Circuit considered an EEOC charge where the plaintiff "checked the retaliation box and stated . . . that he believed he was 'discriminated and retaliated against in violation of [the ADA].'" Chanda v. Engelhard / ICC, 234 F.3d 1219, 1225 (11th Cir. 2000). When the plaintiff brought a Title VII national origin claim against the defendant, the court barred it, stating, "Nothing in his EEOC filing mentions discrimination based on national origin, any complaint about such

12

discrimination, or a claim under Title VII. We must conclude, therefore, that a reasonable investigation based on the EEOC charge did not and would not encompass retaliation based on complaints about national origin discrimination." Id. For the same reasons, Cooper's Title VII claims are inappropriate allegations of new acts of discrimination.

Thus, the Court finds that Cooper failed to exhaust her administrative remedies with regard to her Title VII claims. Furthermore, because more than 300 days have passed since the last allegedly discriminatory act could have taken place, Cooper cannot cure her failure to exhaust administrative remedies. See 42 U.S.C. § 2000e-5(e)(1); E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002)(noting that Florida, as a deferral state, has a 300 day limitation). Therefore, the Court grants with prejudice Community Haven's motion to dismiss as to Cooper's Title VII claims.

**B.   <u>ADA Claims</u>**

Pursuant to the ADA, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §

13

12112(a).

The same procedural requirements that apply to Title VII claims also apply to ADA claims. <u>Zillyette v. Capital One Financial Corp.</u>, 179 F.3d 1337, 1339 (11th Cir. 1999). Cooper has satisfied those requirements and filed a timely EEOC charge alleging ADA discrimination.

### 1. "Disabled" Under the ADA

"Congress recently enacted major changes to the ADA. By adoption of the Amendments Act of 2008, . . . effective 1 January 2009, Congress has expressly instructed courts that '[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals.'" <u>Fikes v. Wal-Mart, Inc.</u>, 322 F. App'x 882, 883 (11th Cir. 2009) (quoting Pub. L. No. 110-325, § 4(a)) (internal citations omitted). Even so, the amended act defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA lists "walking" and "lifting" among major life activities. <u>Id.</u> at § 12102(2)(A).

For reasons stated below, the Court need not reach the question of whether Cooper was disabled under the ADA.

14

## 2. Disability Discrimination

Under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff has the initial burden of establishing a prima facie case of disability discrimination." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). "[T]o establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that '(1) he has a disability, (2) he is a qualified individual, which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability.'" D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1226 (11th Cir. 2005) (quoting Reed v. The Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000)). Furthermore, "An employer's failure to make reasonable accommodation for an otherwise qualified disabled employee constitutes discrimination under the ADA . . . ." Id. at 1225-26; see also Holly v. Clairson Indus., 492 F.3d 1247, 1262 (11th Cir. 2007) ("[A]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue

15

hardship.") (emphasis in original).

The Court finds that Cooper has not alleged sufficient facts to state a prima facie case of disability discrimination because she has not shown that reasonable accommodation was denied to her or that she was otherwise discriminated against because of her disability.

Cooper's claims that Community Haven discriminated against her by failing to reasonably accommodate her are not persuasive because she does not show that she requested an accommodation and linked the request to her disability. "The duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation. . . . Thus, the initial burden of requesting an accommodation is on the employee, and only after the employee has satisfied that burden and the employer failed to provide the accommodation can the employee prevail on a discrimination claim." Knowles v. Sheriff, 460 F. App'x 833, 835-36 (11th Cir. 2012) (citing Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363-64 (11th Cir. 1999)). Furthermore, "An 'accommodation' is 'reasonable -- and, therefore, required under the ADA -- only if it enables the employee to perform the essential functions of her job." Willis v. Conopco, Inc., 108 F.3d 282, 284 (11th Cir. 1997). Therefore, an employee

must link her request for accommodation to her disability and to her performance of an essential function of her job. <u>See</u>, <u>e.g.</u>, <u>Williamson v. Clarke Cnty. Dept. of Human Res.</u>, 834 F. Supp. 2d 1310, 1320 (S.D. Ala. 2011) ("Case authorities are legion for the proposition that, at a minimum, the employee must request some change or adjustment in the workplace *and* must link that request to his disability, rather than simply presenting the request in a vacuum.") (citing <u>E.E.O.C. v. Chevron Phillips Chem. Co.</u>, 570 F.3d 606, 621 (5th Cir. 2009)); <u>Freadman v. Metro. Prop. and Cas. Ins. Co.</u>, 484 F.3d 91, 102 (1st Cir. 2007) (employee's request for reasonable accommodation "(1) must be sufficiently direct and specific, and (2) must explain how the accommodation requested is linked to some disability") (citations and internal quotation marks omitted).

Cooper claims that several of her duties at least periodically pained or tired her -- changing diapers (Doc. # 14 at 13), taking the children on walks (<u>Id.</u> at 12), walking to the administration building (<u>Id.</u>), working the bus route (<u>Id.</u> at 10) -- but she either fails to allege that she asked for and was denied a specific accommodation, or she fails to allege that she explained how her request was linked to her alleged disability and the essential functions of her job.

17

For instance, regarding the "diaper routine," Cooper says that she asked to "do it Different," but she does not provide a specific accommodation requested. (Id. at 13). In the amended complaint, Cooper states, "I Believed that if we divided the children by three between us we would all be less tired." (Id.). However, it appears that Cooper included this information in her pleading, but she never made this specific suggestion to anyone at Community Haven. Cooper also alleges that she asked to be excused from a walk when her foot hurt her. (Id. at 12). Without reaching the question of whether the request was for a reasonable accommodation, the Court notes that Cooper never says that she told anyone at Community Haven *why* she needed to be excused from the walk, or how being excused would enable her to perform the essential functions of her job. (Id.). By her own admission, Cooper never made any requests for accommodation regarding the trips to the administration building, but instead told other staff members that she was "alright." (Id.). Furthermore, although Cooper does say that she asked "about putting someone else on the [bus] route," she does not claim to have linked her request to her alleged disability or the essential functions of her job. (Id. at 10).

Additionally, Cooper claims that after her fall on

November 4, 2009, Cooper gave Caresona a medical report explaining Cooper's physical limitations. (Id. at 6). Cooper claims that Caresona replied, "There's no light duty work here." (Id.). Nonetheless, Cooper does not claim to have requested a specific and reasonable accommodation for any of her duties.

Other than her claims concerning reasonable accommodation, Cooper has presented no evidence that any of Community Haven's actions were the result of unlawful discrimination based on her alleged disability. Cooper makes some vague allegations that she was not promoted and that her work duties were not equal to other employees (Doc. # 14 at 12-13), but the Court need not examine the merit of those claims because Cooper does not provide any evidence to connect those allegations to her alleged disability; instead, Cooper cites to Title VII for relief in association with those allegations (Id.).

Cooper has failed to establish a prima facie case of disability discrimination under the ADA and, therefore, the Court grants without prejudice Community Haven's motion to dismiss as to Cooper's ADA claims.

### C.   **Section 1983 Claims**

To obtain relief under 42 U.S.C. § 1983, a plaintiff must

demonstrate that she was deprived of a federal right by a person acting under color of state law. Patrick v. Floyd Med. Center, 201 F.3d 1313, 1315 (11th Cir. 2000). Section 1983 is not a source of substantive federal rights, but instead, to maintain a section 1983 action, a plaintiff must point to a violation of a specific federal right. Whiting v. Taylor, 85 F.3d 581, 583 (11th Cir. 1996). Cooper does not specify a violated federal right. Instead, she cites to section 1983 before she discusses filing an injury report with her human resources department. (Doc. # 14 at 7).

Additionally, the "under color of state law" requirement excludes from section 1983's reach merely private conduct, no matter how wrongful. Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). For Cooper to bring this section 1983 action against Community Haven, she must demonstrate that the conduct allegedly causing the deprivation of her federal rights is fairly attributable to the state. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). Private parties are state actors for section 1983 purposes "only in rare circumstances." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). Community Haven identifies itself as a private entity (Doc. # 19 at 20), and Cooper has alleged no facts to suggest that this is one of those rare circumstances in which

a private party may constitute a state actor (Doc. # 14).

Thus, the Court grants without prejudice Community Haven's motion to dismiss as to Cooper's § 1983 claims.

D.   **FLSA Claims**

To establish a prima facie case of liability for unpaid overtime under the FLSA, a plaintiff must demonstrate that (1) the defendant employed her; (2) the defendant is an enterprise engaged in interstate commerce covered by the FLSA or the plaintiff is otherwise covered by the FLSA; (3) the plaintiff actually worked in excess of a 40-hour work week; and (4) the defendant failed to pay her overtime wages as required by law. Hines v. Detail Dynamics, Inc., No. 6:09-cv-1116-Orl-28DAB, 2011 WL 4447753, at *2 (M.D. Fla. Oct. 5, 2010) (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).

The plaintiff "must show 'as a matter of just and reasonable inference' the amount and extent of [her] work in order to demonstrate that [s]he was inadequately compensated under the FLSA." Ekokotu v. Fed. Express Corp., 408 F. App'x 331, 340 (11th Cir. 2011) (quoting Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1513 (11th Cir. 1993)). Additionally, to be liable under the FLSA the employer must know or have reason to believe that the employee has worked

21

overtime hours. See Reich v. Dep't of Conservation & Natural Res., 28 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11).

Cooper alleges no facts to show that Community Haven is covered by the FLSA. Additionally, the Amended Complaint actually states, "I worked a minimum of five hours *less* than what I was paid Each week for three months. . . . During the period of time I was working Forty hours per week." (Doc. # 14 at 16) (emphasis added). Although the Court acknowledges that these are likely misstatements (Cooper also says that she is "asking For 60 hours of time worked for but was not paid"), they nonetheless cause Cooper to fail to state a plausible claim under the FLSA's overtime pay provisions.

For these reasons, the Court grants without prejudice Community Haven's motion to dismiss as to Cooper's FLSA claims.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Community Haven for Adults & Children with Disabilities' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 19), is **GRANTED** as follows: Plaintiff Mae E. Cooper's ADA, FLSA, and section 1983 claims are dismissed without prejudice and with leave to amend, and Cooper's Title VII

claims are dismissed with prejudice. Mae E. Cooper is given thirty days to file an amended complaint concerning her ADA, FLSA, and section 1983 claims in an effort to state a cause of action if she is able to. If within thirty days an amended complaint is not filed, the Clerk is directed to close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of January, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel and Parties of Record

23